**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Yvonne Marie Armstrong,                                       Civil No. 12-146 (DWF/LIB)

        Plaintiff,

v.                                                                    **MEMORANDUM**
                                                                        **OPINION AND ORDER**

Ocwen Loan Servicing, LLC;
Deutsche Bank National Trust
Company, as trustee Morgan Stanley
ABS Capital I Inc. Trust 2007-NCI
Mortgage Pass-Through Certificates,
Series 2007-NCI,

        Defendants.

---

Bryan R. Battina, Esq., and William K. Forbes, Esq., Battina Law, PLLC, counsel for Plaintiff.

David R. Mortensen, Esq., Wilford, Geske & Cook, PA, counsel for Defendants.

---

**INTRODUCTION**

        This matter is before the Court on a Motion to Dismiss (Doc. No. 10) brought by Defendants Ocwen Loan Servicing, LLC ("Ocwen"), and Deutsche Bank National Trust Company, as trustee for Morgan Stanley ABS Capital I, Inc. Trust 2007-NCI Mortgage Pass-Through Certificates, Series 2007-NCI ("Deutsche Bank") (together, "Defendants"). For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

In August 2006, Plaintiff Yvonne Marie Armstrong ("Plaintiff") obtained a loan in the amount of $90,000, secured by a mortgage against real property in Cass County, Minnesota (the "Property"). (Doc. No. 1, Ex. 1, Verified Compl. ¶¶ 1, 6.) At all relevant times, Ocwen serviced the mortgage. (*Id*. ¶ 9.) Plaintiff suffered a series of financial difficulties and eventually defaulted on her mortgage. (*Id*. ¶¶ 10, 14.) Plaintiff contacted Ocwen to seek help in removing her account from foreclosure and to apply for a loan modification. (*Id*. ¶ 14.)[1]

On March 14, 2011, Ocwen sent Plaintiff a "Proposed Modification Agreement," which read in part:

> Enclosed please find a proposed modification agreement (the "Agreement") on your loan referenced above for your review and consideration.
>
> In order to accept this modification on your loan, you must complete ALL of the following steps on or before 3/20/11, ("Due Date"):
> 1. **SIGN** the bottom of the Agreement on the line(s) for the Borrower(s);
> 2. **FAX** the fully executed Agreement to: [Home Retention Department]
> 3. **PAY** the full down payment in the amount of: $445.35
> . . .
> 5. **SEND** proof of insurance coverage
> . . .
>
> Time is of the essence on this offer. If ALL of the items above are not completed by the Due Date, the Agreement shall have no force or effect and any down payment received will be returned to you. Please be advised that [Ocwen] will not delay, postpone or otherwise stop any collection efforts until ALL of the steps above have been completed.

---

[1] Plaintiff initially sought a loan modification from Saxon Mortgage Services, Inc., who serviced the loan prior to Ocwen. (Verified Compl. ¶ 12.)

(*Id.* ¶ 16, Ex. A.)  Plaintiff alleges that she spoke to an Ocwen representative on March 22, 2011, who assured her that her loan modification was in order, instructed her to fax in the signed agreement, and gave Plaintiff a "receive code" with which to direct her down payment.  (*Id.* ¶ 18.)  On March 22, 2011, Plaintiff signed the Proposed Modification Agreement and faxed it to Ocwen.  (*Id.* ¶ 19.)  Plaintiff also alleges that she made her down payment via MoneyGram two days later on March 24, 2011.  (*Id.* ¶ 20.)  Plaintiff further alleges that she continued to make monthly payments in April, May, June, July, August, and September 2011, and that Ocwen accepted these payments.  (*Id.* ¶ 21.)  Plaintiff alleges that in October 2011, she made her payment via US Mail instead of MoneyGram, and that Ocwen notified Plaintiff that her account was in default and returned her October payment.  (*Id.* ¶ 22.)  Thereafter, Plaintiff learned that the Property had been sold at a Sheriff's Sale in April 2011.  (*Id.* ¶ 23.)  Deutsche Bank purchased the Property at the Sheriff's Sale.  (*Id.* ¶ 24.)  Ocwen and Deutsche Bank served Plaintiff with an eviction summons and complaint on November 5, 2011, stating that the redemption period had expired and that they were the legal owners with a present right of possession.  (*Id.* ¶ 27.)

Plaintiffs initiated this action on December 14, 2011, by filing a Summons and Verified Complaint in Cass County District Court.  (Doc. No. 1, Ex. 1.)  In the Verified Complaint, Plaintiff asserts five causes of action:  (1) breach of contract; (2) estoppel; (3) violation of Minnesota Statute § 580.02; (4) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); and (5) slander of title.  (*Id.*)  On

January 19, 2012, Defendants removed the action to this Court. (Doc. No. 1.)[2]

Defendants now move to dismiss the Complaint. (Doc. No. 10.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[2] Plaintiff concedes that her FDCPA claim (Count IV) should be dismissed. (Doc. No. 15 at 2.) Plaintiff also argues that her remaining state-law claims should be remanded to Cass County District Court. (*Id*. at 7.) The Court concludes that the dismissal of the FDCPA claim does not eliminate the Court's jurisdiction over the remaining claims. Defendants removed the case pursuant to 28 U.S.C. § 1331 because Plaintiff's claims involved a question of federal law related to the FDCPA, and pursuant to 28 U.S.C. § 1332 on the basis of diversity. (Verified Compl. ¶¶ 2, 3.) In their Notice of Removal, Defendants assert that the parties are citizens of different states and the amount in controversy exceeds $75,000. (*Id*. ¶ 3.) In her opposition, Plaintiff does not challenge the existence of diversity jurisdiction.

545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.   Breach of Contract

In Count I, Plaintiff asserts a cause of action for breach of contract related to the Proposed Modification Agreement.  Plaintiff concedes that the Proposed Modification Agreement contained a March 20, 2011 deadline for Plaintiff's acceptance.  Plaintiff, however, asserts that Defendants waived their right to enforce that deadline when an Ocwen agent allegedly instructed Plaintiff, on March 22, 2011, to fax the signed Proposed Modification Agreement back to Ocwen.  (Verified Compl. ¶ 18.)  Plaintiff further asserts that Ocwen received and accepted Plaintiff's payment on March 24, 2011, and continued to accept monthly payments until October 2011.  (*Id*. ¶¶ 20-22.)[3]

Here, there is no dispute that Plaintiff failed to accept the Proposed Modification Agreement by the March 20 deadline, despite the fact that the Proposed Modification

---

[3]   In their opposition brief, Defendants assert that all payments by Plaintiff were rejected and returned. (Doc. No. 13 at 4 n.1.)  However, on a motion to dismiss, the Court must accept as true Plaintiff's allegations.

Agreement explicitly stated that "[t]ime is of the essence" and that if "ALL of the items" necessary to accept the offer were not "completed by the Due Date, the Agreement shall have no force or effect . . . [and that] Ocwen will not delay, postpone or otherwise stop any collection efforts . . . ." (*Id.* ¶ 16, Ex. A.)  Thus, when Plaintiff spoke to the Ocwen representative on March 22, 2011, the offer had terminated and could no longer be accepted.  *See, e.g., Starlite Ltd. P'ship v. Landry's Rests., Inc.*, 780 N.W.2d 396, 399 (Minn. Ct. App. 2010) ("Minnesota caselaw recognizes that when an offer specifies a deadline for acceptance and that time passes, the offeree's power to accept lapses and an offeree's late acceptance cannot create a contract.").

Despite the lapsed deadline, Plaintiff argues that a contract for a modified loan was created.  However, under Minnesota law, a loan modification constitutes a credit agreement, and Minnesota's Statute of Frauds and Credit Agreement Statute bars the enforcement of "credit agreements" that are not in writing and signed by both the creditor and debtor.  *See* Minn. Stat. § 513.33, subd. 2 ("A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.") [4]; *Myrlie*

---

[4] Minnesota Statute § 513.33, subd. 3, provides:

> (a) The following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of subdivision 2:
>
> (1) the rendering of financial advice by a creditor to a debtor;
>
> (2) the consultation by a creditor with a debtor; or

(Footnote Continued on Next Page)

*v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1108-09 (D. Minn. 2011); *Grueling v. Wells Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 761-62 (Minn. Ct. App. 2005) (explaining that "claims on agreements falling under section 513.33 fail as a matter of law if the agreement is not in writing"). Here, Plaintiff allegedly spoke to an Ocwen agent, sent in the Proposed Modification Agreement with her signature, and attempted payment *after* the expiration of the offer. Thus the proposed agreement was never executed. In addition, the alleged oral communication by the Ocwen agent was never reduced to a signed written agreement and is therefore unenforceable. Based on the above reasons, no contract in law to modify Plaintiff's loan exists. Accordingly, Plaintiff's breach of contract claim fails.[5]

### III.   Promissory Estoppel

In Count II of the Verified Complaint, Plaintiff asserts a claim for estoppel. In particular, Plaintiff asserts that on March 22, 2011, Ocwen's agent represented that Plaintiff's loan modification application had been accepted and was in order. (Verified Compl. ¶ 38.) Plaintiff further alleges that she reasonably relied on that promise to her

---

(Footnote Continued From Previous Page)

> (3) *the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements*.

Minn. Stat. § 513.33, subd. 3 (emphasis added.).

[5]   Plaintiff attempts to frame her breach of contract claim in terms of waiver. However, regardless of Plaintiff's theory, it is apparent that via her breach of contract claim, Plaintiff is actually attempting to enforce an oral loan modification.

detriment. Plaintiff asserts that, under the theory of estoppel, the agent's representation created an enforceable promise to modify her loan. Defendants argue that Plaintiffs' promissory estoppel claim fails because it is not supported by the alleged facts and is barred by the Statute of Frauds and Minnesota's Credit Agreement Statute.

"Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (quotation and citations omitted). Promissory estoppel has three elements: (1) a clear and definite promise; (2) the promisor intended to induce reliance and such reliance occurred to the promisee's detriment; and (3) the promise must be enforced to prevent injustice. *Id*. Based on Plaintiff's allegations, the Court concludes that Plaintiff cannot establish the elements of a promissory estoppel claim. Plaintiff has not alleged any facts to show that Ocwen intended to induce reliance or that such reliance occurred to Plaintiff's detriment. In particular, Plaintiff has not alleged facts to show that she had the financial ability to reinstate her mortgage or take any other action absent a loan modification. Plaintiff was already delinquent on her payments and in the process of foreclosure. In addition, Plaintiff does not allege any facts to support the conclusion that the promise must be enforced to prevent injustice. Again, there is no dispute that Plaintiff was in default on her loan, Plaintiff missed the deadline to modify her loan, and that foreclosure was legally appropriate.

Even if Plaintiff did sufficiently plead a claim for promissory estoppel, the claim would fail under Minnesota's Credit Agreement Statute, which, as discussed above, bars the enforcement of "credit agreements" that are not in writing and signed by both the

8

creditor and debtor. *See* Minn. Stat. § 513.33, subds. 2, 3. As with her breach of contract claim, the crux of Plaintiff's estoppel argument is that Ocwen orally agreed to modify her loan, despite the undisputed fact that Plaintiff missed the deadline to accept the offer. For the reasons discussed above, Plaintiff cannot seek to enforce an alleged oral loan modification under Minnesota law. Accordingly, Plaintiff's promissory estoppel claim is properly dismissed.

### IV.     Minnesota Statute Section 580.02

In Count III, Plaintiffs allege a cause of action under Minnesota Statute § 580.02. Minnesota Statute § 580.02 sets forth four requirements for a foreclosure, the first requirement being that there is a default on the mortgage. Minn. Stat. § 580.02. This cause of action is based entirely on Plaintiff's assertions that she and Ocwen entered into a binding loan modification agreement that brought her current on her loan, that she was not in default on the modified loan, and that the Sheriff's sale was therefore unlawful. (Verified Compl. ¶¶ 45-50.) As discussed above, Plaintiff's attempt to enforce an alleged oral loan modification is not permitted under Minnesota law. Further, there is no dispute that Plaintiff defaulted on her mortgage. (*Id.* ¶ 14.) Plaintiff has otherwise failed to allege any other reason that Defendants violated § 580.02. Thus, Plaintiff has failed to state a plausible claim upon which relief can be granted and Count III is properly dismissed.

### V.      Slander of Title

In Count V, Plaintiff also asserts a slander of title claim. Under Minnesota law, a slander of title claim has four elements: (1) a false statement concerning the real property

owned by the plaintiff; (2) publication of the false statement; (3) malice; and (4) special damages. *See Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000). This claim is also based on Plaintiff's unsupportable assertion that she and Ocwen entered into a binding loan modification agreement. Specifically, Plaintiff alleges that she and Ocwen entered into a loan modification agreement, that she was not in default on her mortgage under the modified agreement, that Defendants had no right to foreclose, and that Defendants made numerous false statements concerning ownership of the Property. (Verified Compl. ¶¶ 61-67.) Because Plaintiff cannot enforce an oral loan modification agreement and does not dispute that the original mortgage provides that foreclosure is a remedy for default, Plaintiff's slander of title claim necessarily fails. Thus, Count V is properly dismissed.

## VI.     Plaintiff's Allegations Regarding Monthly Payments

Plaintiff alleges that she made several months of payments in accordance with the terms of the Proposed Loan Modification. Defendants contend that each payment was promptly rejected and returned. (Doc. No. 13 at 4 n.1.) However, even accepting Plaintiff's allegations that Defendants accepted several months of payments as true (as the Court must do on a motion to dismiss), these allegations do not support Plaintiff's claim that Ocwen should be bound by the terms of the Proposed Modification Agreement. If, indeed, Defendants did accept payment despite the non-existence of a loan modification agreement with Plaintiff, the proper cause of action appears to be one for unjust enrichment. Plaintiff did not plead unjust enrichment in the Verified Complaint. To prevail on a claim for unjust enrichment, Plaintiff would have to prove

that Defendants received something of value, which they were not entitled to, under circumstances that would make it unjust to permit its retention. *See Southtown Plumbing, Inc. v. Har–Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). The Court will stay this Order for thirty days to allow Plaintiff to move to amend the Verified Complaint to assert a cause of action for unjust enrichment. The Court cautions Plaintiff, however, that she will need to plead more than mere conclusory allegations that payments were made. Moreover, in the event Plaintiff moves to amend, and the Court later discovers that Plaintiff had access to information establishing that her payments were, indeed, rejected, the Court will consider a motion to award Defendants attorney fees and costs incurred in opposing the motion to amend.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. [10]) is **GRANTED**.

2. Plaintiff's Verified Complaint (Doc. No. [1, Ex. 1] is **DISMISSED WITH PREJUDICE**.

3. This Order is stayed for a period of thirty (30) days to allow Plaintiff time to file a motion to amend the Verified Complaint consistent with this Order.

Dated:  September 12, 2012              s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge